SONIA CHAE (IL Bar No. 6199271)
chaes@sec.gov
Attorney for
SECURITIES AND EXCHANGE COMMISSION
175 W. Jackson Blvd., Suite 1450
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

In re

DAVID FOLEY,

        Debtor

Case No. 19-50335 SLJ
Chapter 11

Date: June 6, 2019
Time: 1:30 p.m. (Pacific Time)
Court: United States Bankruptcy Court
        Courtroom 3099
        280 South First Street
        San Jose, CA

**OBJECTION OF SECURITIES AND EXCHANGE COMMISSION TO**
**DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT**
**DATED APRIL 3, 2019 [DKT 22]**

     The United States Securities and Exchange Commission ("SEC") objects to the Combined

Plan of Reorganization ("Plan") and Disclosure Statement ("Disclosure Statement") dated April 3,

2019 [Dkt 22] ("Plan/DS") filed by David Foley ("Debtor") in the above-captioned case. In support

of its objection, the SEC respectfully states as follows:

**<u>INTRODUCTION</u>**

     The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on February

19, 2019 in the United States Bankruptcy Court for the Northern District of California. The Debtor is

a defendant in *SEC v. River North Equity LLC, et al.*, No. 1:19-cv-01711 (N.D. Ill.), which is pending

Case: 19-50335   Doc# 34   Filed: 05/29/19   Entered: 05/29/19 10:20:24   Page 1 of 9

in the United States District Court for the Northern District of Illinois ("District Court") ("SEC Action").[1]  The SEC objects to approval of the Disclosure Statement because it: (i) lacks adequate information, as required by Section 1125(b) of the Bankruptcy Code, that would enable creditors to make an informed judgment as to whether the Plan is feasible, as required by Section 1129(a)(11) of the Bankruptcy Code; and (ii) describes a Plan that fails to provide that the SEC's claims against the Debtor are nondischargeable pursuant to Sections 523(a)(19) and 1141(d)(2) of the Bankruptcy Code.

**BACKGROUND**

On March 11, 2019, the SEC commenced the SEC Action by filing a complaint ("Complaint") in the District Court against the Debtor, his wife, other individuals, and companies, based on their roles in a multi-million dollar microcap stock distribution and market manipulation scheme involving NanoTech Entertainment, Inc. ("NTEK") and NanoTech Gaming, Inc. ("NTGL") which resulted in a public distribution of 1.1 billion shares of NTEK stock.[2]  The Debtor is the co-founder of NTEK and the founder of NTGL, and has served as NTEK's Chief Executive Officer, Chief Operating Officer, and Chairman of the Board, among other titles.  The Complaint alleges, among other things, that the Debtor caused NTEK to issue convertible promissory notes to himself for debt purportedly owed to him by NTEK for unpaid salary and expenses, converted his notes to stock in NTEK, and sold that stock to an unregistered securities trading company, which, in turn, sold those shares to the public without registration.[3]  A copy of the Complaint is attached hereto as Exhibit A.

On November 14, 2018, the Debtor filed a petition for relief under Chapter 13 of the

---

[1]    The SEC is the federal agency charged with, among other things, the regulation and enforcement of the federal securities laws.  *See* 15 U.S.C. §§ 77t, 78d, 78u, *et al*.  The SEC Action is continuing during the pending bankruptcy case as an action by a governmental unit to enforce such governmental unit's police or regulatory power, in accordance with the exception to the automatic stay provided in Section 362(b)(4) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(4).

[2]    NTEK and NTGL are microcap or penny stock companies quoted on OTC Link operated by OTC Markets Group Inc..

[3]    The Complaint alleges that the Debtor violated Sections 5(a) and (c), and Sections 17(a)(1), (2) and (3) of the Securities Act of 1933 ("Securities Act"), and Sections 9(a)(2) and 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.  Pursuant to the Complaint, the SEC seeks orders of permanent injunction against the Debtor (including a bar against participating in a penny stock offering or serving as an officer or director of an issuer that has securities registered pursuant to Section 12 of the Exchange Act), and further seeks orders against the Debtor for disgorgement of ill-gotten gains and a civil penalty.

Case No. 19-50335 SLJ
SEC Objection to Disclosure Statement

Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, which case was dismissed. [4]  On February 19, 2019, the Debtor filed the instant Chapter 11 case.  On April 4, 2019, the Debtor filed the Plan/DS.

According to the Plan/DS, NTEK is in the final stages of obtaining $21 million in new financing that will resolve NTEK's cash flow problems and enable it to pay the Debtor $475,000 in back wages and a $1,288,000 loan receivable which he asserts are owed to him by NTEK.  *See* Plan/DS at 15-16.  The new financing is expected to close in two phases: "the first within a month; the second within three months thereafter."  *Id*.  The Plan/DS provides that general unsecured claims ("Class 6") will be paid in full over five years from the Debtor's disposable monthly income of $7,762.67. [5]  *See id*. at 6; 20.  The Plan/DS separately classifies the SEC's claim against the Debtor ("Class 7"), asserts that the SEC's claim is disputed and unliquidated, and provides that the SEC's allowed claim will be paid in full with interest from: (i) the remainder of the Debtor's back wages from NTEK after payment of a mortgage arrearage of $369,000 and attorney fees of $30,000; and (ii) NTEK's repayment of a $1,288,000 loan receivable owed to the Debtor.  *Id*. at 6; 16.  The Plan/DS further provides that any deficiency will be paid in monthly payments of $4,000 "until paid," presumably within the five year term of the Plan.  *Id*. at 6.

On May 6, 2019, the SEC filed a proof of claim in the amount of $9,816,490, plus prejudgment interest, for violations of the federal securities laws as alleged in the Complaint (the "SEC Claim").

### DISCUSSION

**A. The Disclosure Statement Should Not be Approved Because It Fails to Disclose Adequate Information for Creditors to Determine If the Plan is Feasible Pursuant to 11 U.S.C. § 1129(a)(11)**

Section 1125(b) of the Bankruptcy Code provides, in relevant part, that "[a]n acceptance or

---

[4]    *In re David Foley*, No. 18-52539-MEH (Bankr. N.D. Cal.).

[5]    The Plan/DS indicates that the Debtor's gross monthly employment income will be $62,500 for purposes of funding the Plan.  It appears that the expected source of such income will be NTEK after it obtains $21 million in financing that is contemplated under the Plan/DS.  *See* Plan/DS at 19.

Case: 19-50335   Doc# 34   Filed: 05/29/19   Entered: 05/29/19 10:20:24   Page 3 of 9

rejection of a plan may not be solicited … from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder … a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Adequate information, in turn, is defined as "information of a kind, and in sufficient detail … that would enable a hypothetical investor typical of holders of claims or interests … of the relevant class to make an informed judgment about the plan …." 11 U.S.C. § 1125(a)(1). *See also California Fidelity, Inc. v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996)(the requirement that the disclosure statement contain adequate information is to enable those voting on the plan to make an informed decision regarding acceptance or rejection of the plan).

In addition, a disclosure statement should clearly and succinctly inform the average unsecured creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). What constitutes adequate information is committed to the bankruptcy court's discretion and is determined on a case-by-case basis. *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (9th Cir. B.A.P. 2003)("the court must require disclosure appropriate to the circumstances of each case"); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999).

Here, the Disclosure Statement is inadequate because it fails to disclose even the most basic information about the source of funding for the Plan that purportedly will allow the Debtor to pay creditors, including the SEC, in full as provided under the Plan. The Debtor's ability to fund the Plan is entirely dependent on whether NTEK will secure $21 million in new financing since the Debtor contends such financing will permit NTEK to pay the Debtor $475,000 in back wages and a loan receivable of $1,288,000. The Plan/DS provides that such funds will be used to cure the Debtor's mortgage arrears to US Bank Trust and to pay the SEC Claim under the Plan. The Plan/DS appears

Case No. 19-50335 SLJ
SEC Objection to Disclosure Statement

to indicate that such financing will also permit NTEK to provide the Debtor with future income of $62,500 per month that will be used to fund monthly payments to creditors, including the SEC, under the Plan. *See* Plan/DS at 19. Despite the obvious importance of the NTEK financing to the Plan, however, the Disclosure Statement contains virtually no information about it. In particular, the Disclosure Statement fails to disclose: (i) who is providing the financing; (ii) whether the lender has issued a commitment letter and/or executed loan documents with respect to the financing; (iii) the terms of the loan (including the consideration which the lender will receive in exchange for the financing and whether such consideration will involve the issuance of securities); (iv) whether the loan terms impose any conditions that could limit NTEK's ability to pay the Debtor his asserted back wages and outstanding loan receivable; and (v) the risk that NTEK will fail to obtain such financing and the effect of such failure on the success of the Plan.

The Disclosure Statement's only information regarding the purported financing to NTEK is the single statement that it "is expected to close in two phases: the first within a month; the second within three months thereafter." *Id*. at 15-16. Two years ago, NTEK made a similar announcement that it was on the eve of securing $21 million in financing. In a financial statement for the quarter ending March 31, 2017 ("NTEK 2017 Financial Statement"), as posted on the OTC Markets website, NTEK stated to the investing public: "On March 3, 2017[,] the company issued a convertible debenture for an investment of $21,000,000 to be completed within 90 days upon completion of due diligence." NTEK 2017 Financial Statement at 7. A copy of the NTEK 2017 Financial Statement is attached hereto as Exhibit B. Thus, it appears that NTEK has been seeking $21 million in financing, without success, since at least March of 2017. The Disclosure Statement is silent as to what has changed since that time, if anything, that would cause such financing to materialize, let alone within the four month time frame estimated in the Disclosure Statement. Indeed, it stands to reason that at least one change in circumstances that has occurred since March of 2017, namely the filing of the

Case No. 19-50335 SLJ
SEC Objection to Disclosure Statement

SEC Action against NTEK, has made it more difficult for NTEK to obtain such financing. Although "[the] Debtor contends that the filing of the [C]omplaint has not dissuaded the prospective lenders," again, the Disclosure Statement lacks any information providing support for such a statement. *See* Plan/DS at 17.

In addition, even assuming that NTEK is able to obtain $21 million in financing, the Plan/DS provides scant information to assure creditors that the Debtor will receive what he claims is owed to him by NTEK, let alone monthly income of $62,500 over the next five years. For example, the Disclosure Statement is silent as to whether NTEK's board of directors has approved the payment of back wages and a loan receivable to the Debtor. The Plan/DS also contains little information regarding NTEK's prospects for generating the revenue necessary to pay the Debtor's expected salary, other than a business plan for NTEK in which all financial information is completely redacted. *See* Plan/DS at Exhibit 5.

Section 1129(a)(11) of the Bankruptcy Code establishes what is commonly known as the "feasibility" requirement,[6] which means that a plan cannot be approved unless the plan proponent has demonstrated that the plan has at least "a reasonable probability of success." *See In re Acequia*, 787 F. 2d 1352, 1364 (9th Cir. 1986)(finding a plan to be feasible where the debtor had presented "ample evidence to demonstrate that the [p]lan ha[d] a reasonable probability of success"). Accordingly, "plans which are based on speculation are not proper candidates for reorganization." *In re Seasons Partners LLC*, 439 B.R. 505, 515 (Bankr. D. Ariz. 2010)(*citing In re Pizza of Haw., Inc.*, 761 F. 2d 1374, 1382 (9th Cir. 1985). Here, the Disclosure Statement's failure to provide any information regarding the NTEK financing makes it impossible for creditors to evaluate whether the Plan is feasible, as the Plan/DS does not show that the Debtor will have the funds or assets sufficient to fund

---

[6]     Section 1129(a)(11) specifically provides that the bankruptcy court shall confirm a plan only if confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor …." 11 U.S.C. § 1129(a)(11).

Case No. 19-50335 SLJ
SEC Objection to Disclosure Statement

Case: 19-50335    Doc# 34    Filed: 05/29/19    Entered: 05/29/19 10:20:24    Page 6 of 9

the Plan. In the absence of any meaningful information regarding the source of funding for the Plan, the Debtor's ability to fund the Plan is, at best, wholly speculative, and creditors are left unable to determine whether the Plan is feasible.

Finally, the SEC notes that the complete lack of transparency in the Plan/DS with respect to the NTEK financing is troubling in light of the allegations in the Complaint. In particular, the proposed method of funding the Plan, in the form of NTEK's intended payment to the Debtor of unpaid wages and an outstanding note, is concerning since NTEK's issuance of convertible notes for debt purportedly owed to the Debtor for unpaid salary and expenses was the very means by which the Debtor conducted the fraud that is the subject of the Complaint.

**B. The Plan Should Provide that the SEC Claim is Excepted from Discharge Pursuant to Sections 523(a)(19) and 1141(d)(2) of the Bankruptcy Code**

The Plan provides for the Debtor's discharge upon completion of payments under the Plan. Plan/DS at 9. Pursuant to Section 523(a)(19), however, a discharge in an individual chapter 11 or 7 bankruptcy case does not discharge the debtor from any debt arising from a judgment or settlement concerning a violation of the federal securities laws. *See* 11 U.S.C. § 523(a)(19); 1141(d)(2). Accordingly, the Plan/DS should be modified to provide that the SEC Claim is not subject to discharge and is excepted from such provision pursuant to Sections 523(a)(19) and 1141(d)(2), and that to the extent the SEC Claim is not paid in full as provided under the Plan, it will not be discharged and will continue to be owed by the Debtor.

**C. The Plan/DS Lacks Adequate Information regarding the SEC Claim**

The SEC filed the SEC Claim after the Plan/DS was filed. The Plan/DS should be revised to disclose both the amount of the SEC Claim and the risk that the Debtor will be unable to pay the SEC Claim in full as provided under the Plan.

Case: 19-50335    Doc# 34    Filed: 05/29/19    Entered: 05/29/19 10:20:24    Page 7 of 9

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court deny approval of the Disclosure Statement.

Dated: May 29, 2019

Respectfully submitted,

*/s/ Sonia Chae*
Sonia Chae
Attorney for
SECURITIES AND EXCHANGE COMMISSION

## <u>CERTIFICATE OF SERVICE</u>

I, Sonia Chae, do hereby certify that a copy of the foregoing OBJECTION OF SECURITIES AND EXCHANGE COMMISSION TO DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT  DATED APRIL 3, 2019 [DKT 22] was served on the parties that receive electronic notification in these proceedings on this day of May 29, 2019.

/s/ Sonia Chae_____
Attorney for the
Securities and Exchange Commission

Case No. 19-50335 SLJ
SEC Objection to Disclosure Statement

Case: 19-50335   Doc# 34   Filed: 05/29/19   Entered: 05/29/19 10:20:24   Page 9 of 9